IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donna Kay Davis, ) | C/A No. 0:14-4314-TMC-PJG |
|                Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | |
|                Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Donna Kay Davis, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a "severe" impairment;

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)  whether the claimant can perform her past relevant work; and

(5)  whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In March 2009, Davis applied for DIB, alleging disability beginning February 24, 2009. Davis's application was denied initially and upon reconsideration, and she requested a hearing before

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



an administrative law judge ("ALJ"). A hearing was held on November 30, 2010, at which Davis, who was represented by Johnnie D. Fulton, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on January 26, 2011 finding that Davis was not disabled. (Tr. 181-89.) The Appeals Council granted Davis's request for review and issued an Order on June 28, 2012 vacating the hearing decision and remanding the case for further proceedings. (Tr. 201-03.) Specifically, the Appeals Council found that the hearing decision was unclear as to Davis's residual functional capacity in that it did not specify how many breaks Davis would require and did not contain any mental limitations that related to Davis's severe mental impairments; that there were treating source statements in the record that were not evaluated by the ALJ; that the ALJ did not consider Davis's obesity and what affect it may have had on her ability to perform work related activities; and that there were mental health records that were not made part of the record as well as new evidence submitted with the request for review that must be evaluated; and instructed the ALJ to:

[1]   Evaluate all evidence in the expanded record, which includes updated treatment records and statements from the claimant's treating physicians.

[2]   Evaluate the claimant's obesity pursuant to Social Security Ruling 02-01p.

[3]   Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinions in accordance with the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.



> [4]    If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Id.)

A second hearing was held on December 3, 2012, at which Davis appeared and testified. Davis was represented at the hearing by Mark Dunning, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on March 8, 2013 finding that Davis was not disabled. (Tr. 22-45.)

Davis was born in 1966 and was forty-two years old on February 24, 2009—the alleged disability onset date. (Tr. 238.) She has a college education and has past relevant work experience as probation/parole agent. (Tr. 308, 314.) Davis alleged disability due to "Bipolar type II w/severe depression, Crohn's Disease, Chronic Fatigue/Pain (possible Fibromyalgia), [and] HypoThyroidism." (Tr. 307.)

In applying the five-step sequential process, the ALJ found that Davis had not engaged in substantial gainful activity since February 24, 2009—the alleged onset date. The ALJ also determined that Davis's Crohn's disease, hyperthyroidism, fibromyalgia/polyarthralgia, obesity, bipolar disorder/depression disorder, generalized anxiety disorder, obsessive disorder, obsessive-compulsive disorder, panic disorder, and dependent personality disorder were severe impairments. However, the ALJ found that Davis did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Davis retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) with certain additional limitations. Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for about 6 hours each out of an 8-hour workday. The claimant must be allowed to change positions and must be in close proximity to a bathroom. The claimant will require additional breaks for up to 5 minutes each every [*sic*] 1 to 2 hours throughout an 8-hour workday. The claimant can occasionally use ladders, ropes, and scaffolds. The claimant can frequently perform all other postural activities. The claimant must avoid concentrated exposure to vibration, heat, cold, and hazards. The claimant can perform work involving simple, routine, repetitive tasks.

(Tr. 30.) The ALJ found that Davis was not capable of performing any past relevant work, and that considering Davis's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Davis could perform. Therefore, the ALJ found that Davis was not disabled from February 24, 2009 through the date of her decision.

The Appeals Council denied Davis's request for review on September 17, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers



v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Davis raises the following issues for this judicial review:

Issue 1    Improper hypothetical to the VE.  In order to rely on the testimony of a vocational expert, the ALJ must present a hypothetical which precisely sets forth all of Davis's impairments.  The ALJ failed to include Davis's moderate limitation in concentration, persistence, or pace, therefore proposing an incomplete hypothetical.  Can an ALJ decision based on an incomplete hypothetical be considered a decision based upon substantial evidence?

Issue 2    Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight.  The ALJ improperly rejected Dr. Richards' opinion which supported a finding of disability.  Where the ALJ improperly disregards the opinions of treating physician, can his decision be supported by substantial evidence?

(Pl.'s Br., ECF No. 11.)

## DISCUSSION

**A.    Hypothetical Question Presented to the Vocational Expert**

Davis first argues that the ALJ erred in failing to include limitations with regard to her concentration, persistence, or pace in the hypothetical question presented to the vocational expert. When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of

Page 6 of 16



providing evidence that other work exists in significant numbers in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); 20 C.F.R. § 404.1560(c)(2). As stated above, the Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

In this case, the ALJ asked the vocational expert whether jobs existed in the national economy that a hypothetical individual with Davis's residual functional capacity could perform. Specifically, the ALJ presented the vocational expert with the following hypothetical:

> I'm going to ask you if you would to assume a hypothetical person, age 46, college degree, B.S. in criminal justice, past relevant work same as the claimant's; with the ability to do no more than light work with the following limitations: the person would [be] able to sit, stand, or walk six out of eight hours each, for a total of a[n] eight hour day, but she would need to be able to change positions; and she would need to be in close proximity to a bathroom; she would need to take extra, additional breaks for up to five minutes, probably every hour or two; all right, should also only occasional ladder, frequent on all the other posturals; avoid concentrated exposure to vibration, heat, cold, hazards . . . .

(Tr. 82) (errors in original). The vocational expert responded that an individual with those limitations could not perform Davis's past relevant work or any direct transfer jobs, but he testified that such an individual could perform three specific light occupations with an SVP of 2 and that there would be other sedentary jobs that such an individual could perform. The ALJ

> determined that the vocational expert's testimony is consistent with, but not wholly reliant upon, the information contained in the Dictionary of Occupational Titles. Specifically, vocational expert indicated that his testimony regarding the claimant's sit/stand option and need to be in close proximity to a bathroom is based upon his familiarity with the representative jobs given and the environments in which they are performed.

(Tr. 44.) Therefore, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy" and a finding of not disabled is appropriate.  (Id.)

Davis, relying on the recent decision by the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), argues that the ALJ erred by finding "moderate limitations" with regard to Davis's concentration, persistence, or pace at Step Three of the sequential evaluation process, but no limitations regarding Davis's mental impairments in the hypothetical question.  In Mascio, the Fourth Circuit held that remand was warranted, in part, because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the claimant's ability to maintain concentration, persistence, or pace at Step Three.  Mascio, 780 F.3d at 638.  The Fourth Circuit stated that it "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)).  However, the Court continued stating,

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity.  For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.  But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (citation omitted).

Contrary to Davis's arguments, her case is not directly on point with Mascio.  As an initial matter, the ALJ actually stated that she found that Davis had *at most* moderate difficulties in concentration, persistence, or pace. (Tr. 28.)  Further, unlike in Mascio, the ALJ in Davis's case



provided a detailed discussion of her limitations stemming from her mental impairments in performing the residual functional capacity assessment. (See Tr. 36-38.) The ALJ found that "[i]n consideration of the claimant's mental symptoms, alleged medication side effects, and physical discomfort, I have further limited the claimant to work involving, simple, routine, repetitive task[s]. The evidence establishes that the claimant requires no greater mental work restrictions." (Tr. 36.) The ALJ proceeds to discussed specific evidence, including records addressing Davis's concentration, persistence, and pace. For example, among other evidence, the ALJ found that "during the March 13, 2009 face-to-face interview with an agency representative, the claimant exhibited no problems related to understanding, coherency, concentrating, talking, or answering" (Tr. 36); during a May 13, 2009 mental status examination "claimant was alert, responsive, and able to maintain attention and concentration"; and during a July 5, 2011 psychological evaluation, the psychologist indicated that testing suggested "some concentration difficulty on complex tasks." (Tr. 37.) The ALJ also addressed opinion evidence from two treating doctors that suggested greater limitations in this area and gave them little weight. Further, earlier in the decision, the ALJ specifically addressed Davis's testimony which included allegations of difficulty in concentration and focus; however, the ALJ found that Davis's allegations were not wholly credible, and Davis has not alleged any error with regard to this determination. Thus, unlike in <u>Mascio</u>, the ALJ sufficiently addressed any limitations in Davis's concentration, persistence, or pace in assessing her residual functional capacity and presenting the hypothetical question to the vocational expert.

**B.     Treating Physician**

Davis next argues that the ALJ erred in evaluating opinion evidence from Dr. Robert Richards, Davis's treating psychiatrist. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide



"a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

Page 10 of 16

*PJG*

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

At issue are several opinions from Dr. Richards, which the ALJ summarized as follows:

In a May 4, 2009 form completed for a private insurance company, Dr. Richards indicated that he had recommended that the claimant stop working in February 2009 due to severe depression and pain (19F/7-8). Through March 8, 2010 and November 14, 2010 psychiatric review technique forms, Dr. Richards indicated that the claimant had listing-level mental impairments, including up to marked difficulties in social functioning, extreme problems with maintaining concentration, persistence, or pace, and four or more episodes of decompensation of extended duration (29F, 39F). Through a May 18, 2011 statement, Dr. Richards indicated that the claimant had "serious limitations of function." He further stated that the claimant "would have no mental energy for sustained attention during a depressed phase of her illness [and] would not be able to adapt to minor work stressors such as change in routine." This statement further provides:

> In summary, during the depressed phase of her illness [the claimant] is not able to work due to decreased motivation, decreased energy, decreased ability to concentrate on routine tasks and excessive need for sleep. She is not able to interact appropriately with coworkers due to irritability and sensitivity to criticism. [The claimant] is not able to work during the hypomanic phase of her illness due to irritability, hypersensitivity to minor stimuli, distractibility, and inability to sit still. She is not able to work with coworkers during the manic phase of her illness due to the risk of verbal aggression associated with irritability. In my opinion, Ms. Davis' treatment resistant Bipolar Disorder would result in more than three missed days from work per month. In addition, she would miss several days of work per month due to her Crohn's Disease and Fibromyalgia. Lastly, the medications required to control panic attacks and maintain a minimal level of functioning significantly impair her ability to remain alert at work for any extended period of time.

(50F, 51F). In an October 28, 2012 statement, Dr. Richards indicated that the claimant's condition had not changed since in [*sic*] May 2011 statement (74F).

(Tr. 39-40) (alterations in original). In evaluating these opinions, the ALJ stated that she gave little weight to Dr. Richards's conclusions because the record did not support them. The ALJ noted that Dr. Richards was Davis's psychiatrist and "has not treated her for any physical condition." (Tr. 40.)

Page 11 of 16



Therefore, the ALJ found that Dr. Richards "has no expertise or treatment basis to opine as to the effects of the claimant's Crohn's disease and fibromyalgia." (Id.) The ALJ continued stating,

> Dr. Richards' treatment notes do not support his opinions. These notes record the claimant's complaints, but include very few objective mental status examination abnormalities. As discussed, these notes repeatedly provide that the claimant was alert and fully oriented, with no suicidal or homicidal ideation. These notes also repeatedly provide that the claimant had normal speech and no disorders of thought or perception. According to Dr. Richards' records, the claimant responded positively to pharmacological treatment (6F, 10F, 21F, 35F, 37F, 62F, 71F, 72F, 73F, 75F, 76F). Dr. Richards' opinions are further inconsistent with the examinations findings of Dr. Jones and Dr. Kofoed (14F, 57F) and the evidence of the claimant's activities, discussed in detail above.

(Tr. 40.)

Davis argues that the ALJ's findings are unreasonable. Davis argues that "Dr. Richards was very aware of the combined effects of all of Davis's impairments on her ability to work." (Pl.'s Br. at 28, ECF No. 11 at 31.) Davis asserts that Dr. Richards's treatment records "consistently note the intertwined nature of Davis's impairments and the effects of her physical impairments including fatigue and sleep disturbance," pointing to specific examples supporting this assertion.[2] (Id. at 28-29, ECF No. 11 at 31-32.) Further, Davis argues that although Dr. Richards's notes often indicated that Davis was appropriately oriented, had normal speech, and was free of suicidal or homicidal ideation, there was ample objective evidence supporting his opinions, such as findings that Davis's mood was depressed or anxious and her affect blunted, congruent, or flat. Moreover, although Davis may have had positive responses to medication, she asserts that such a finding does not mean her conditions were controlled, arguing that her medications or dosages were continually increased or

---

[2] The court observes that many of these records appear to be based on Davis's self-reports of pain as opposed to any medical findings or observations supporting such severe limitations from pain and in physical abilities. Further, in evaluating Davis's subjective complaints of pain, the ALJ found that "the claimant's contentions regarding her symptoms and limitations are not wholly credible." (Tr. 32.) Davis has not challenged this finding.



adjusted. Davis argues that a notation or statement of improvement is not inconsistent with an opinion of disability. Davis also argues that the ALJ failed to properly consider aspects of the opinions of Dr. Randel R. Jones and Dr. Bruce A. Kofoed (both consultative examiners) that are consistent with Dr. Richards's opinions. Finally, Davis challenges the ALJ's finding that her daily activities were inconsistent with Dr. Richards's opinions.

Upon review of the ALJ's decision and the record, the court concludes that the ALJ applied the relevant factors in evaluating Dr. Richards's opinions and finds that Davis has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Richards's opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). As indicated above, in discussing these opinions, the ALJ recognized that Dr. Richards was a treating psychiatrist but found that his opinions were not consistent with the record, including his own treatment notes; that his speciality was psychiatry; and that he did not treat Davis for her physical impairments. The ALJ discussed Dr. Richards's treatment notes, as well as other treatment notes, in greater detail in summarizing the medical records. (Tr. 34-38.) Contrary to Davis's arguments, in discussing Dr. Richards's notes, the ALJ does not appear to have selectively summarized his records, and in fact, observed that Dr. Richards's findings included depressed mood and anxiety at times as well as increases or changes to Davis's medications. (Tr. 37-38.) However, the ALJ found that, overall, the records "include very few objective mental status examination abnormalities." (Tr. 37.) Additionally, the ALJ's decision clearly reflects that in giving the opinions of Dr. Jones and Kofoed great weight, the ALJ observed the very aspects of the opinions that Davis argues support Dr. Richards's opinions.

Page 13 of 16



The ALJ also found that Davis's activities of daily living were inconsistent with Dr. Richards's opinions. These activities included reports that Davis attended water fitness classes up to five times a week, performed light housework, dusted her bedroom, changed her sheets, cleaned her bathroom (including the tub, toilet, and floor), prepared simple meals daily, regularly visited with her parents and sister, talked on the telephone with a friend, went out to eat with friends, chatted with others over the internet, drove and went outside daily, shopped in stores weekly, watched television, performed floral arranging, read and worked crossword puzzles at times, helped her parents do their banking, attended AA meetings daily, and expressed an interest in neighborhood bicycling. Davis challenges the ALJ's reliance on these activities to demonstrate that she can engage in work on a regular and continuing basis and appears to argue that the ALJ misrepresented Davis's ability to engage in all of these activities. However, Davis cannot demonstrate that it was unreasonable for the ALJ to consider these activities in evaluating Dr. Richards's opinions of significant limitations. Moreover, the ALJ merely relied on these activities as one reason among several to discount Dr. Richards's opinions.

In sum, the ALJ properly weighed Dr. Richards's opinions and reasonably found that the medical findings and observations in the record, as well as Davis's daily activities, did not support Dr. Richards's opinions. Although Davis may be able to point to selective records that arguably support Dr. Richards's opinions, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, although Davis contends that the ALJ's findings are unreasonable, the crux of Davis's arguments appear to ask this court to re-weigh the evidence. It is clear that the ALJ, as part of her duties in weighing the evidence, properly relied on medical evidence in making her residual functional capacity determination and resolving conflicts of evidence. Where, as here, the record contains conflicting medical evidence, it is the purview of the



ALJ to consider and weigh the evidence, and resolve the conflict.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  For all of these reasons, the court finds that Davis has not shown that the ALJ's decision with regard Dr. Richards's opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## RECOMMENDATION

For the foregoing reasons, the court finds that Davis has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 23, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).